FILED
2021 MAY 7 PM 2:47
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| VERA BUYS., <br><br>            Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security, <br><br>            Defendant. | MEMORANDUM DECISION AND ORDER <br><br><br> Case #4:20-cv-00056 PK <br><br> Magistrate Judge Paul Kohler |

This matter comes before the Court on Plaintiff Vera Buy's appeal from the decision of the Social Security Administration denying her application for disability and disability insurance benefits. The Court held oral arguments on April 28, 2021. Having considered the case, the Court will affirm the administrative ruling.

I. STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether his findings are supported by substantial evidence and whether the correct legal standards were applied.[1] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[2] The ALJ is required to consider all of the evidence, although he or she is not required to discuss all of the evidence.[3] If supported by substantial evidence, the Commissioner's findings are conclusive and must be

---

[1] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[2] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[3] *Id.* at 1009–10.

1

affirmed.[4] The Court should evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[5] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[6]

## II.  BACKGROUND

A.  PROCEDURAL HISTORY

In April 2017, Plaintiff filed an application for disability and disability insurance benefits, alleging disability beginning on June 1, 2016.[7] Plaintiff's claim was denied initially and upon reconsideration.[8] Plaintiff then requested a hearing before an ALJ, which was held on May 29, 2019.[9] The ALJ issued a decision on July 1, 2019, finding that Plaintiff was not disabled.[10] The Appeals Council denied Plaintiff's request for review on May 1, 2020,[11] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[12]

On June 11, 2020 Plaintiff filed her Complaint in this case.[13] On August 13, 2020, both parties consented to a United States Magistrate Judge conducting all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the

---

[4] *Richardson*, 402 U.S. at 390.

[5] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[6] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[7] R. at 154–55.

[8] *Id.* at 66, 80.

[9] *Id.* at 26–54.

[10] *Id.* at 9–25.

[11] *Id.* at 1–6.

[12] 20 C.F.R. § 422.210(a).

[13] Docket No. 3.

Tenth Circuit.[14]  The Commissioner filed his Answer and the administrative record on October 16, 2020.[15]

Plaintiff filed her Opening Brief on November 20, 2020.[16]  Defendant filed his Answer Brief on December 23, 2020.[17]  Plaintiff filed her Reply on January 8, 2021.[18]

B.      MEDICAL HISTORY

Plaintiff claimed disability based upon ankylosing spondylitis, fibromyalgia, osteopenia, celiac disease, and frequent sinus infections.[19]  Plaintiff stated that she was in constant pain and had daily fatigue, that her medications lowered her immune system resulting in frequent sickness, and that her celiac disease caused inflammation and extreme pain.[20]

Plaintiff was diagnosed with ankylosing spondylitis in September 2017 "[a]fter 30 years of presumed disease activity."[21]  Plaintiff has received treatment for this condition, mainly consisting of prescribed medications.  The medical records reflect that these medications have had varying degrees of success.  However, Plaintiff has consistently sought treatment for pain and stiffness.  She also has a history of infections due to her ankylosing spondylitis and related treatment, as many of the medications to treat that condition also suppress the immune system.

---

[14] Docket No. 11.
[15] Docket Nos. 14–21.
[16] Docket No. 24.
[17] Docket No. 26.
[18] Docket No. 27.
[19] R. at 178.
[20] *Id.* at 187.
[21] *Id.* at 523.

3

She also has a history of fibromyalgia.[22] Plaintiff was diagnosed with celiac disease in November 2011.[23] This has resulted in pain, swelling, and rashes. Plaintiff also has a history of fatigue.[24]

C. HEARING TESTIMONY

Plaintiff testified that she was unable to work full-time because of fatigue, stiffness, and pain.[25] These symptoms made it difficult for her to perform basic tasks.[26] Plaintiff stated that she needed to constantly move and stretch to avoid stiffness, but this led to fatigue.[27] She also stated that her celiac disease resulted in painful swelling and rashes.[28] However, Plaintiff was able to work four hours per day four days per week.[29] She also visited her elderly father and helped prepare simple meals for him and make his bed.[30] Plaintiff also testified that she could perform chores around the house, but doing so left her in pain and fatigued.[31]

D. THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

---

[22] *Id.* at 531.
[23] *Id.* at 367.
[24] *Id.* at 1045.
[25] *Id.* at 36–37.
[26] *Id.* at 37.
[27] *Id.*
[28] *Id.* at 43.
[29] *Id.* at 31.
[30] *Id.* at 39.
[31] *Id.* at 42–43.

activity from her alleged onset date of June 1, 2016.[32] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: ankylosing spondylitis, disorder of the cervical and lumbar spine, fibromyalgia, and celiac disease.[33] At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment.[34] The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain restrictions.[35] At step four, the ALJ determined that Plaintiff could not perform her past relevant work.[36] At step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform and, therefore, she was not disabled.[37]

### III. DISCUSSION

Plaintiff raises three issues in her brief: (1) whether the ALJ erred in evaluating Plaintiff's ankylosing spondylitis; (2) whether the ALJ erred in evaluating Plaintiff's fibromyalgia; and (3) whether the ALJ erred in evaluating Plaintiff's celiac disease.

A.   ANKYLOSING SPONDYLITIS

The ALJ found that Plaintiff's ankylosing spondylitis to be a severe impairment. The ALJ recognized that Plaintiff complained of pain and fatigue as well as headaches and illness due to a suppressed immune system. The ALJ found that Plaintiff's "impairments could

---

[32] *Id.* at 14.
[33] *Id.* at 14–15.
[34] *Id.* at 15.
[35] *Id.* at 15–18.
[36] *Id.* at 19.
[37] *Id.* at 19–20.

5

reasonably be expected to cause the alleged symptoms" but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."[38]

The ALJ provided a number of reasons to support this conclusion. Plaintiff takes issue with each of the reasons provided by the ALJ, pointing to evidence that could detract from the ALJ's conclusion. First, the ALJ noted that the medical imaging evidence did not support Plaintiff's alleged loss of function.[39] In support of this conclusion, the ALJ pointed to several images showing only mild findings. Plaintiff argues that the ALJ failed to acknowledge evidence of inflammation and elevated sedimentation. However, this does not conflict with the ALJ's determination that "[t]he medical evidence generally [did] not support the claimant's alleged loss of functioning."[40] The objective evidence cited by the ALJ did not support Plaintiff's claims of function loss and that conclusion is well supported.

Second, the ALJ found that Plaintiff's treatment was essentially routine and conservative in nature, and that her symptoms were well controlled.[41] Plaintiff disputes the ALJ's characterization that her treatment was conservative, arguing that the medication she was prescribed—Cimzia—is a more aggressive form of treatment for ankylosing spondylitis. However, the ALJ correctly noted that Plaintiff has only been prescribed medication for this condition. Even assuming her medications were not conservative, this does not take away from

---

[38] *Id.* at 16.
[39] *Id.*
[40] *Id.*
[41] *Id.*

6

the other reasons set out by the ALJ to support the finding that Plaintiff was not disabled. Plaintiff also argues that her condition was not well controlled because she continued to seek out treatment and, at times, was not doing well. Again, the ALJ provided evidence to support his determination that Plaintiff's condition was generally well controlled with medications.

Third, the ALJ found that Plaintiff's longitudinal medical history was not consistent with a claim of disability.[42] Specifically, the ALJ noted that Plaintiff had a lengthy history of employment despite her conditions and there was nothing to indicate that her conditions had worsened.[43] Plaintiff argues that she consistently reported worsening symptoms. Despite these reports, the objective medical evidence remained largely unchanged.

Fourth, the ALJ found that Plaintiff's described daily activities were inconsistent with her complaints of disabling symptoms and limitations.[44] Plaintiff argues that the ALJ misstated her activities. However, Plaintiff testified at the hearing that she helped take care of her father and was able to do household chores. Plaintiff further stated that she was able to appropriately groom herself, prepare meals, do light housework, do laundry, drive, go grocery shopping, exercise, and attend church weekly.[45] Plaintiff further argues that her activities require frequent breaks for stretching and changing positions. However, the ALJ's RFC accounts for this by requiring a sit/stand option and noting that "the frequency of position change [is] at the sole discretion of the employee."[46] Plaintiff also argues that the ALJ failed to adequately account for

---

[42] *Id.* at 17.
[43] *Id.*
[44] *Id.* at 17–18.
[45] *Id.* at 189–97, 214–19.
[46] *Id.* at 15.

her fatigue. But, as discussed below, the ALJ specifically addressed Plaintiff's fatigue and the limitation to light work reflects this consideration.

Finally, the ALJ found that the opinions of Plaintiff's primary care physician, Tyler Rencher, D.O., were less persuasive than those of the state agency physicians.[47] Dr. Rencher opined that Plaintiff would be extremely limited in her ability to perform full-time work.[48] The ALJ concluded that this opinion was not supported by the nature and scope of Plaintiff's treatment, the objective findings in the record, and the opinions of the state agency physicians. This conclusion is well supported for many of the same reasons already discussed.

In contrast, the ALJ found the opinions of the state agency physicians to be persuasive. The ALJ noted that the consulting physicians had reviewed the entirety of the record and were familiar with Plaintiff's condition over time.[49] Plaintiff takes issue with this statement, arguing that additional evidence submitted after the consulting physicians reviewed the file does not support their findings. However, a review of this evidence shows that it is largely the same as the evidence reviewed by the consulting physicians.[50] A single statement that plaintiff was not "doing that great" on her current mediation does not negate the ALJ's conclusion.[51]

Plaintiff does an excellent job marshalling the evidence to support her contention that the ALJ erred in his evaluation of her ankylosing spondylitis. However, this simply shows that there

---

[47] *Id.* at 18. Because Plaintiff applied for benefits after March 27, 2017, the ALJ applied a new set of regulations for evaluating medical opinion evidence. *See* 20 C.F.R. § 404.1520c.

[48] R. at 1040–52.

[49] *Id.* at 18.

[50] *See id.* at 856–1056.

[51] *Id.* at 911.

were evidentiary disputes in the record. "The ALJ was entitled to resolve such evidentiary conflicts and did so."[52] While Plaintiff put forth well-reasoned thoughts, the Court finds that they fall into the category of asking the Court to reweigh the evidence. The Court's role, however, is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[53] A review of the record reveals that the ALJ's findings are well supported despite some evidence to the contrary. Therefore, remand is not required on this ground.

B. FIBROMYALGIA

Plaintiff argues that the ALJ failed to discuss her reports of sleep issues, headaches, and fatigue, despite medical records noting these symptoms. However, the ALJ explicitly discussed that Plaintiff "alleged she cannot work because of fatigue and pain."[54] The ALJ also noted that plaintiff "reported severe headaches and frequent illnesses due to a suppressed immune system."[55] Thus, it is not the case that the ALJ did not discuss these symptoms. The ALJ acknowledged that Plaintiff's "impairments could reasonably be expected to cause the alleged symptoms" but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and

---

[52] *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016).

[53] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. Fed. Aviation Admin.*, 372 F.3d 1195, 1200 (10th Cir. 2004).

[54] R. at 16.

[55] *Id.*

9

other evidence in the record."[56] The ALJ went on to discuss the medical evidence, much of which is referenced above. And for the same reasons stated there, remand is not required on this issue.

Plaintiff also complains that the ALJ did not discuss or reference SSR 12-2p in his decision. SSR 12-2p sets out how the Commission evaluates fibromyalgia.[57] That ruling establishes a two-step process for evaluating such claims. First, there must be evidence that the individual has a medically determinable impairment.[58] Fibromyalgia qualifies as such an impairment.[59] Second, if a medically determinable impairment is established, "we then evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work."[60] The ALJ followed this two-step process in evaluating Plaintiff's impairments, which resulted in him limiting Plaintiff to light work.[61] Thus, the Court finds any failure to reference or discuss SSR 12-2p by name harmless.

C.   CELIAC DISEASE

Plaintiff also argues that the ALJ erred in his evaluation of her celiac disease. The ALJ discussed Plaintiff's diagnosis and her symptoms.[62] While Plaintiff complains that it is unclear

---

[56] *Id.*

[57] SSR 12-2p, 2012 WL 3104869 (July 25, 2012).

[58] *Id.* at *5.

[59] *Id.*

[60] *Id.*

[61] R. at 15–18.

[62] *Id.* at 16–17.

how the ALJ accounted for this impairment in his RFC determination, Plaintiff fails to point to any evidence suggesting that her celiac disease caused any work-related restrictions. Therefore, remand is not required on this ground.

## IV. CONCLUSION

Having made a thorough review of the entire record, the Court hereby AFFIRMS the decision below.

DATED: 07 May 2021

BY THE COURT:

PAUL KOHLER
United States Magistrate Judge